IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| THERESA CUMMINGS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:14CV465 |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Theresa Cummings ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed her application for Disability Insurance Benefits on November 10, 2010, alleging a disability onset date of December 12, 2009. (Tr. at 133-36.)[1] Her application was denied initially and upon reconsideration. (Tr. at 42-70, 74-81.) Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 82-84.) Following the subsequent hearing on May 24, 2012, the ALJ issued a decision finding

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #15].

Plaintiff not disabled within the meaning of the Act. (Tr. at 15-24.) On January 15, 2014, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 5-10.)

II.  LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where

conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: history of fractures of the lower limbs, depressive disorder, and anxiety disorder. (Tr. at 17.) The ALJ found at step three that none of these impairments, singly or in combination, met or equaled a disability listing. (Tr. at 17-18.) Therefore, the ALJ assessed Plaintiff's RFC and determined that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), which includes sitting, walking or standing for 6 hours in an 8-hour workday and lifting, carrying, pushing or pulling up to 25 pounds frequently and 50 pounds occasionally. She is further limited to performing simple, routine, repetitive tasks in a low stress, non-production environment.

(Tr. at 18-19.) The ALJ next determined that the mental demands of Plaintiff's past relevant work exceeded her RFC. (Tr. at 22.) However, he concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert

5

regarding those factors, she could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 23-24.)

Plaintiff now challenges the ALJ's RFC assessment. In particular, she contends that the RFC does not sufficiently encompass her mental limitations, as it fails to address the moderate limitations in both concentration, persistence, or pace and social functioning identified at step three of the sequential analysis. (Pl.'s Br. [Doc. #18] at 3; Pl.'s Supp. Br. [Doc. #22] at 1-2.) In light of the Fourth Circuit's recent decision in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), which was issued after the ALJ's decision in the present case, the Court agrees that the ALJ erred by failing to include these limitations in the RFC or, alternatively, explain why such limitations were not required.[4]

In <u>Mascio</u>, the Fourth Circuit held that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

---

[4] The Court notes that Plaintiff also submitted additional documents to demonstrate that she was found disabled for purposes of a Supplemental Security Income claim as of August 2014. [Doc. #23.] However, that subsequent determination appears to relate to a separate, later time period. In any event, in light of the determination set out above, the Court need not reach any issues related to that supplemental filing.

Id. (internal citation omitted).

In the present case, at the third step, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties. During the consultative examination on May 23, 2011, she reported good concentration most of the time but sometimes drifting." (Tr. at 18.) Plaintiff argues that her limitation to "simple, routine, repetitive tasks in a low stress, non-production environment" does not adequately account for her moderate limitation in concentration, persistence, or pace. (Pl.'s Supp. Br. at 2) (citing Tr. at 19). In response, the Commissioner cites medical evidence from the record and Plaintiff's daily activities to support the conclusion that Plaintiff "retained intact concentration, persistence, or pace ability" (Def.'s Br. [Doc. #25] at 13), and further contends that the mental health records would not otherwise require additional limitations to the RFC. (Def.'s Br. at 8-10, 12-13.) However, the ALJ specifically found that Plaintiff had moderate limitations in concentration, persistence, and pace, and the Court cannot consider post hoc rationalizations contrary to the findings of the ALJ.

Moreover, in considering Plaintiff's contention, this Court notes that there is no explanation in the ALJ's decision addressing Plaintiff's "drifting" or otherwise linking the limitations in the RFC to Plaintiff's moderate limitations in concentration and persistence. Although there is a limitation to a "non-production environment," neither the ALJ's decision, nor the state agency physician's report which the ALJ credits, links Plaintiff's difficulties in concentration and persistence to the non-production limitation or to any other aspect of the RFC. Accordingly, the record does not appear to provide the "logical bridge" necessary for this Court to find that the RFC adequately takes into account Plaintiff's moderate difficulties

7

in concentration, persistence, and pace. See Jones v. Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *5 (E.D.N.C. Aug. 13, 2015)(collecting cases):

> See Franklin v. Colvin, No. 5:14–cv–84–MOC–DLH, 2015 WL 4510238, at *2 (W.D.N.C. July 24, 2015) (remanding for further proceedings where ALJ found claimant had moderate difficulties in concentration, persistence, and pace, but failed to connect such limitations to the RFC that found he could perform "simple, one-two step tasks in a low stress environment, defined as one that does not involve production/assembly-line/high-speed work or contact with the public"); Hagerdorn v. Colvin, No. 2:12–cv–29–RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015) (finding that limitations to simple, routine, and repetitive tasks in a low-production, low-stress work setting, defined as occasional change in job setting or decision making, did account for some of claimant's mental limitations, such as the ability to understand, carry out, and remember instructions, respond appropriately to work situations, and deal with changes in a routine work setting, but not for his moderate limitations in concentration); Scruggs v. Colvin, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence and pace); Raynor v. Colvin, No. 5:14–CV–271–BO, 2015 WL 1548996, at *2 (E.D.N.C. Apr. 7, 2015) (remanding where the hypothetical posed to the VE did not pose any limitations related to concentration and persistence other than limiting plaintiff to simple, routine tasks and the ALJ's written decision limited plaintiff to work with simple instructions and work-related decisions as well as no fast-paced production); Salmon v. Colvin, No. 1:12–cv–1209, 2015 WL 1526020, at *3 (M.D.N.C. Apr. 2, 2015) (holding that a hypothetical limiting claimant to 'simple, routine, repetitive tasks in that [she] could apply commonsense understanding to carry out instructions furnished on a written, oral, or diagrammatic form' did not account for claimant's moderate limitations in concentration, persistence and pace and did not address her ability to say on task).

See also Garcia v. Colvin, 5:14CV942, 2016 WL 319860, at *3 (E.D.N.C. Jan. 4, 2016); Boyet v. Colvin, No. 1:14CV762, 2016 WL 614708, at *6 (M.D.N.C. Feb. 16, 2016) ("[W]ithout further explanation, the ALJ's crediting of the state agency consultants' opinions does not provide a 'logical bridge' between the ALJ's conclusion that Plaintiff suffered moderate

concentration deficits and the ALJ's decision that Plaintiff could perform simple tasks in the work place, without any further concentration-related restriction." (internal citation omitted)).

Moreover, even if the Court could find that a limitation to a "low stress, non-production environment" was sufficient to account for Plaintiff's moderate limitations in concentration and persistence, the ALJ provided no explanation as to why Plaintiff's moderate limitations in social functioning failed to translate into any work-related limitations in her RFC. See Panna v. Colvin, No. 1:14CV229, 2015 WL 5714403, at *4 (W.D.N.C. Aug. 31, 2015) (finding that Mascio warranted remand where ALJ failed "to specifically address Plaintiff's limitations in social functioning in formulating Plaintiff's RFC.") report and recommendation adopted, No. 1:14-CV-00229-MOC, 2015 WL 5725246 (W.D.N.C. Sept. 29, 2015); Russell v. Colvin, No. 1:14-cv-00203, 2015 WL 3766228, at *4-5 (W.D.N.C. June 16, 2015) (extending Mascio to social functioning limitations).

In the present case, the ALJ found at step three that "[i]n social functioning, the claimant has moderate difficulties. She reported that she cries a lot, lacks motivation and does not socialize, however she acknowledged that she is not currently tak[ing] any psychiatric medications and has not received any recent mental health treatment. She indicated that she does not have any friends but she has a relationship with one of her sibling[s], her two adult children, and her ex-husband." (Tr. at 18.) This finding of moderate limitations in social functioning is not addressed or accounted for in the RFC. This failing is particularly notable given the evidence of Plaintiff's ongoing problems relating to others. (Tr. at 20-22, 33-35.) Indeed, consultative examiner Dr. Gibbs, who was specifically given "greater weight" by the ALJ, diagnosed depressive disorder and noted that Plaintiff was "quite anxious," and that

9

"[w]ithin a work setting, this claimant's heightened anxiety would potentially interfere with her ability to effectively respond to work pressures and deal with others." (Tr. at 267.) That determination was consistent with the State agency physicians who determined that Plaintiff could "perform medium work activity with certain postural limitations, sustain goal-directed activities in routine settings, and function adequately in low stress environments with limited social interaction." (Tr. at 22, 61-62, 267.) Thus, the ALJ relied on Dr. Gibbs and on the consistent determination of the State agency physicians, but did not include as part of the RFC any of the social limitations found by Dr. Gibbs or by the state agency physicians and did not explain that determination.

In response to Plaintiff's claim, Defendant contends that Dr. Gibbs and the state agency consultant found only <u>mild</u> restrictions in social functioning, and that "the record contained ample medical and non-medical evidence" that social limitations were unnecessary. (Def.'s Br. at 8-10.) However, the ALJ expressly determined that Plaintiff suffers from <u>moderate</u> social limitations, and as noted above, the Court cannot consider contrary post hoc rationalizations. <u>See</u> <u>Panna</u>, 2015 WL 5714403, at *4 (stating that "[it] is not for this Court to determine Plaintiff's RFC, and the Government[] may not avoid remand by offering after the fact rationalizations for the ALJ's decision. Nor will the Court speculate as to what the ALJ did or did not consider. The RFC determination is for the ALJ, and the decision must provide sufficient reasoning to allow this Court to conduct meaningful review").

Defendant also contends that any error is harmless because Plaintiff's attorney asked the vocational expert to consider a hypothetical mirroring the RFC "and add that the individual would only be able to have occasional contact with coworkers and members of the general

public." (Tr. at 39-40.) The attorney then asked if the added social limitation would exclude any of the positions previously identified, to which the expert replied:

> No, it would not. The essential functions of the jobs that were outlined do not involve contact with either coworkers or the public in order to perform the jobs. Obviously, all jobs require some casual contact with coworkers and supervisors for giving and receiving of instruction, but they're not an integral part of the task or the job.

(Tr. at 40.)

The Count has considered this contention. However, the Court notes first that it is not clear that the hypothetical posed by Plaintiff's counsel regarding "occasional contact with coworkers and members of the general public" would be the limitation that the ALJ would have formulated to account for Plaintiff's social impairments in light of the record evidence. Moreover, the Vocational Expert testified that even the jobs listed require some contact with coworkers and supervisors, and the Court is not in a position to make a post hoc determination of whether such level of contact would be within an accurately re-formulated RFC. In essence, Defendant's arguments would still require the Court to formulate a social functioning limitation for the RFC, find that such a limitation was supported by substantial evidence, and then apply the Vocational Expert's testimony to determine whether the listed jobs would be within Plaintiff's re-formulated RFC. Ultimately, the Court concludes that resolution of this issue "would require excessive intrusion into the ALJ's domain." Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *3 (M.D.N.C. March 25, 2014). In this regard, as noted in Anderson, this Court's "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the

11

propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" Id. at *1 (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)). In applying this doctrine in Anderson, the Court noted that "jurisprudence on this issue is far from clear," and "this court will err on the side of caution" and avoid "excessive intrusion into the ALJ's domain." Id. at *3. Thus, while the Court may make simple conclusions of law in finding that an ALJ's error is harmless, the Court may not "parse the administrative transcripts and make . . . dispositive findings of fact that the ALJ did not make." Id. at *4. Here, the ALJ found that Plaintiff suffered from moderate social limitations, which is also supported by the medical evidence relied upon by the ALJ, but the ALJ failed to account for any social limitations in the RFC or otherwise explain why that limitation was excluded from the RFC. Therefore, the Court concludes that in this case, as in Mascio, remand is necessary to allow the ALJ to address these issues in the first instance.[5]

---

[5] On remand, the ALJ should also be mindful of the potential improper assessment of credibility against a pre-determined RFC. In particular, the ALJ included what has become known as standard boilerplate language in ALJ decisions:
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Tr. at 20.) In Mascio, the Fourth Circuit held that this boilerplate "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" Mascio, 2015 WL 1219530, at *5 (quoting Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir.2012)). The court explained that the ALJ should have compared Mascio's alleged functional limitations to the other evidence in the record, not to Mascio's RFC. Id. at *5.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #24] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #17] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 26th day of February, 2016.

                                              /s/ Joi Elizabeth Peake
                                              United States Magistrate Judge